## GEORGE W. HOLCOMB

*v.*

## JOHN DAVIS.

1. STOCK RUNNING AT LARGE — *in Monroe, St. Clair, and other counties—construction of act of* 1867. Under the act of March 7th, 1867, entitled " An act to prevent domestic animals from running at large in the counties of Monroe, St. Clair and other counties," it is only necessary, in order to render that act operative in any of the counties named therein, which may vote upon the question, that a majority of the votes cast on the proposition for or against, shall be in favor of its adoption. That is sufficient to give force to the law although the number of votes cast in its favor may be less than a majority of the whole voting population of the county. The ninth and tenth sections of that act explain and limit the meaning of the eighth section, in that regard.

2. IMPOUNDING STOCK — *in Monroe and other counties, under act of* 1867. The statute of 1867 has not authorized any but householders to take up and impound stock running at large contrary to its provisions. And it has been held that a party who seeks to justify the taking up and impounding of stock, under that law, must show that he is a householder.

3. SAME — *demand by owner and tender of expenses.* The owner of cattle taken up in accordance with such law, before he can maintain replevin for their recovery against the person impounding them, must show both that

he demanded the cattle from the defendant, and that, before the commencement of the suit, he offered to pay him fifty cents per head for taking up the same, and the price of one-half bushel of corn per day per head during the time defendant had them in possession.

4. ERROR — *waiver.* Where there is error in an instruction which would operate against the party asking it, the objection will be regarded as waived.

5. INSTRUCTIONS should never be given unless there is evidence in the case tending to support the legal propositions announced therein.

APPEAL from the Circuit Court of Livingston county; the Hon. CHARLES H. WOOD, Judge, presiding.

The opinion states the case.

Mr. A. E. HARDING, for the appellant.

Messrs. PILLSBURY & LAWRENCE, for the appellee.

MR. JUSTICE WALKER delivered the opinion of the Court:

This was an action of replevin, brought by appellee before a justice of the peace in Livingston county, to recover the possession of two cows. A trial was had before the justice, resulting in a verdict and judgment in favor of plaintiff, from which an appeal was prosecuted to the circuit court of that county, where a trial was had, with a like result, and the case is brought to this court by appeal, and a reversal is urged upon the errors assigned.

On the trial in the court below, it appeared that appellant took up and impounded the animals under the act of March 7, 1867 (Sess. Laws, 97), and the evidence shows that on the vote for and against adopting that act in Livingston county, there were cast for "keeping up stock," as required by the statute, 1,244 votes, and "against keeping up stock," 971 votes. It also appears that there were cast at that election 2,600 votes. It is therefore contended, that while there was a majority of those voting on that question, in favor of "keeping up stock," that

still there was not a majority of all the legal votes of the
county cast in favor of the proposition, and the law, for that
reason, did not become operative in Livingston county.

The eighth section of the law declares that it shall not be in
force until it shall be ratified by a majority of the legal voters
of the county, etc. This section, considered independent of
other provisions of the act, would, no doubt, require a majority
of all the votes cast at the election at which the question was
submitted for its adoption. But it is urged that the language
employed in the ninth and tenth sections explains the legis-
lative intention, and modified the language employed in the
eighth section.

The ninth section required the clerk of the county court to
give notice of the election, and provides for the form of the
votes cast. It then declares, if a majority of all the votes cast
in the county are in favor of adopting the law, then the law
should be and continue in full force. The tenth section declares
that, in case a majority of the votes cast are against the adop-
tion of the law, the county court shall have power, at any sub-
sequent regular term, to submit the same question to the voters
of the county, at the next regular election.

It will be observed that the tenth section declares that if a
majority of the votes cast are against the law, then another, or
subsequent election, may be held. If the construction con-
tended for by appellant be correct, the question could not be
again submitted, unless the majority of all the votes cast at
that election, for officers or otherwise, was against the law;
and a case like the present would not be within its provisions.
In this case there is not a majority, either of all the votes cast
at the election, or on this question, against the proposition.
And we must conclude that, inasmuch as the general assembly
have provided for again submitting the question in case of its
failure, it was intended to apply to any case where, from
any cause, it failed to be adopted. And if so, it would seem
to be repugnant to the construction claimed by appellant.

The fact that the law requires the votes to be for and against,

would seem to clearly imply, that, if a majority cast on the question was for the law, it should become operative. If those not voting are to be counted against the law, why require them to vote at all on the question. It would be supererogation. Hence we conclude, there was a reason for requiring a negative as well as an affirmative vote. And that reason was, no doubt, to enable a majority voting on the question, to control in its adoption or rejection. Again, in providing for a resubmission, the tenth section declares, if, at a subsequent election on the question, " a majority vote for the same, then the act shall take effect." This last provision does not, in terms or meaning, require any more than a majority voting on the proposition, to give the law effect. No reason is perceived, nor do we think any exists, for a different rule to be applied, as between a first and second election on the proposition. It could not have been intended, that it should require a majority of all the votes in the county, to adopt the law at one election, and only a majority of those voting on the question, at a subsequent election, to give the law force and validity. We are therefore of opinion, that the true construction of these sections, when considered together, only requires a majority of the votes cast on the proposition, to give force to the law ; and that the ninth and tenth sections explain and limit the meaning of the eighth section.

It is also urged that the court erred in refusing to give this instruction :

" Under the law as it existed in this county at the time of the taking up of the cows in question, it was unlawful for cattle to run at large, and if the jury believe, from the evidence, that the cows in question were running at large in said county, and committing trespass on the land of defendant, then the taking up by defendant was lawful, and in such case the law is for defendant, unless they further believe, from the evidence, that plaintiff demanded said cows, or, before the commencement of this suit, offered to pay the said defendant fifty cents per head for taking up the same, and the price of one-half

bushel of corn per day per head during the time defendant had them in possession."

This instruction is faulty, in putting the demand and tender in the alternative. Both of these acts were necessary to entitle appellee to maintain replevin for the recovery of the property. But the error would have operated against appellant, who asked the instruction, and he must be considered as having waived it.

But there is a fatal objection to the instruction, in the failure to inform the jury that they must believe that appellee was a householder. The statute has not authorized any but householders to take up and impound stock running at large contrary to its provisions. And this has been held essential to a justification under this statute. See *Erlinger* v. *Boneau*, 51 Ill. 94. But had the instruction been, in this respect, sufficient, still it was properly refused, as there is no evidence in the record upon which to base it. The court should never give instructions unless there is evidence in the case tending to support the legal propositions announced. For these reasons the judgment of the court below must be affirmed.

*Judgment affirmed.*